**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-1572
_____

GARY E. SAVIDGE,
                                        Appellant

v.

POSTMASTER GENERAL OF THE UNITED STATES;
UNITED STATES POSTAL SERVICE

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D. C. No. 3-08-cv-02123)
District Judge:  Honorable Robert D. Mariani

Submitted under Third Circuit LAR 34.1(a)
on November 8, 2013

Before:  GREENAWAY, JR., GARTH and ROTH, <u>Circuit Judges</u>

(Filed: February 21, 2014)

_____

O P I N I O N
_____

**ROTH**, <u>Circuit Judge</u>:

Gary Savidge appeals the District Court's grant of summary judgment to Patrick R. Donohoe, Postmaster General of the U.S. Postal Service (USPS),[1] on Savidge's record-of-disability claim under the Rehabilitation Act (RA), 29 U.S.C. § 701 *et seq*. Savidge also appeals the jury's verdict in favor of USPS on his regarded-as-disabled claim. *See* 42 U.S.C. § 12102(1). For the reasons that follow, we will affirm.

## I.  Background[2]

Savidge served in the U.S. Marine Corps during the Gulf War. He suffered from several disabilities as a result of his military service. They included fibromyalgia and peroneal nerve palsy. To alleviate his symptoms, Savidge took pain medication daily and wore a brace that went down the back of his leg and underneath his foot. The brace caused Savidge to walk with a noticeable limp. The Department of Veterans Affairs (VA) deemed Savidge 40 percent disabled, but noted his conditions did not present "marked interference with employment."

Following his military service, Savidge worked as a mail sorter for USPS. In the fall of 2006, Savidge decided to seek a transfer to the maintenance department to work as a building custodian. Savidge expressed interest to maintenance manager Rick Franco and informed him that he wore the brace, that a transfer would accommodate his physical issues, and that he would have to retire on disability without a transfer. Franco told Savidge to take a custodial exam, which Savidge took and passed.

---

[1] Although USPS was properly dismissed as a defendant, *see* 42 U.S.C. § 2000e-16(c), we refer to claims against Donohoe in his official capacity as being against USPS.
[2] We write primarily for the parties, who are familiar with this case. Therefore, we set forth only those facts, construed in Savidge's favor, necessary to our analysis.

In 2007, Savidge applied to replace retiring custodian Gene Pollack, a disabled veteran whose knee injury made walking difficult and required him to take absences under the Family and Medical Leave Act (FMLA). Franco testified that he was to select the applicant who had filed the earliest request for the position. That employee was Ed Jones. Jones had an acceptable work, attendance and safety record and he passed the physical exam. Jones was selected.

Early in 2008, a second custodial position became open. At that time, USPS's hiring policy prioritized current maintenance staff and American Postal Workers Union (APWU) members over other employees. On January 24, 2008, Franco wrote USPS Human Resources (HR) seeking approval to interview a non-APWU employee instead of four APWU members, including Savidge, because the APWU members' "attendance leaves much to be desired." Franco also noted one unnamed applicant "is seeking permanent light duty for an injury off the job." HR approved Franco's request, due to the APWU members' "Attendance (FMLA not included)," and informed Savidge that his reassignment request had been rejected due to his poor attendance record.

Franco later told APWU officials that Savidge had informed him of his medical issues, that he did not know if Savidge could climb a ladder, as the job required, and that he "did not need another Gene Pollak in maintenance." Franco also admitted he was aware that Savidge walked with a limp and an abnormal gait.

On November 24, 2008, Savidge sued USPS alleging discrimination based on theories of actual disability, record of disability, and regarded as disabled. On March 30, 2012, the District Court denied USPS's motion for summary judgment on all claims. The

3

court then granted USPS's motion for reconsideration in part, finding it was entitled to summary judgment on the actual-disability and record-of-disability claims, but that a jury would decide Savidge's regarded-as-disabled claim.

The trial began on January 28, 2013. After two days of testimony and a charge conference with counsel, the court instructed the jury on Savidge's regarded-as-disabled claim as follows: To show that USPS intentionally discriminated against him, Savidge must prove "that regarding him as disabled was a determinative factor in [USPS's] decision not to transfer [him] to a custodial position in 2007 and 2008." The court also told the jury that, to prove that USPS regarded him as disabled, Savidge must prove that USPS treated him as having an impairment that "substantially limited his ability to work," whether or not he had such an impairment, or that "he was discriminated against, because of an actual or perceived impairment, even if the impairment did not or was not perceived to limit a major life activity." The court defined disability under the RA as "a physical impairment that substantially limits a major life activity," which activities "include but are not limited to caring for one's self, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working."

The court gave the jury a verdict form. Question one on that form asked, "With regard to the 2007 custodial position, has Mr. Savidge established by a preponderance of the evidence that [USPS] regarded him as disabled by having a physical impairment that substantially limited his ability to work a class of jobs or broad range of jobs in 2007?"

4

Question seven used the same language but replaced 2007 with 2008. At 3:46 p.m., the court dismissed the jury to deliberate.

At 4:40 p.m., the jury submitted a note to the court that stated in full, "letter of intent Ed Jones signature relative." After discussing this incomprehensible note on the record with counsel, the court, over Savidge's objection, directed his deputy clerk to enter the jury room to "ask whether they mean relative or relevant." The clerk did so, and testified four minutes later that he "[w]ent in [the jury room] and asked [the jury] to explain their first question. I asked them exactly what the Judge asked me to, and I asked them to write out their answer."

The jury's written answer was another question: "Is Ed Jones missing signature, relevant to that documents [sic] legality, was the letter of intent legal without signature?" After again conferring with counsel, the court directed the clerk to deliver its written response to the jury at 5:26 p.m. Forty-one minutes later, the jury reached a verdict in favor of USPS. Savidge appealed.

## II. Standard of Review

We review a grant of summary judgment de novo. *See Liberty Lincoln-Mercury, Inc. v. Ford Motor Co.*, 676 F.3d 318, 323 (3d Cir. 2012). Summary judgment is only appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Id.* We also review de novo "whether [the jury] instructions misstated the law." *United States v. McLaughlin*, 386 F.3d 547, 552 (3d Cir. 2004).

We review a district court's verdict form and trial management for abuse of discretion. *See, e.g.*, *Armstrong v. Burdette Tomlin Mem'l Hosp.*, 438 F.3d 240, 245-46

5

(3d Cir. 2006). In reviewing the court's *ex parte* contact with the jury, we "disregard all errors and defects in the proceeding that do not affect any party's substantial rights." Fed. R. Civ. P. 61; *see also Skill v. Martinez*, 677 F.2d 368, 371 (3d Cir. 1982).

## III.    Discussion[3]

Savidge contends the District Court erred by 1) granting summary judgment for USPS on his record-of-disability claim, 2) admitting the 2006-10 collective bargaining agreement (CBA) into evidence when the parties had been relying on the 2000-03 version, 3) instructing the jury on his regarded-as-disabled claim and defining it on the verdict form, and 4) directing the clerk to enter the jury room. None of these arguments has merit.

First, the court properly granted summary judgment on the record-of-disability claim. Savidge's FMLA and VA records indicate he could ambulate and climb stairs, albeit with a limp and at a slow pace, and could work in a light-duty job. Assuming Franco or another USPS decision-maker saw those records, they are insufficient to show actual disability under the RA. *See Kelly v. Drexel Univ.*, 94 F.3d 102, 106-08 (3d Cir. 1996). Therefore, they are also insufficient to support a record-of-disability claim. *Tice v. Ctr. Area Transp. Auth.*, 247 F.3d 506, 513 (3d Cir. 2001).

Second, the court did not abuse its discretion by admitting into evidence the later versions of the CBA because the relevant portion of both CBAs on transfers and reassignment were identical.

---

[3]  The District Court had jurisdiction under 28 U.S.C. § 1331. We have appellate jurisdiction under 28 U.S.C. § 1291.

Third, the court's jury instructions did not misstate the law. Savidge offered evidence that Franco knew Savidge might retire on disability, told HR that an APWU member sought "permanent light duty for an injury off the job," and thought Savidge could not climb ladders. The court instructed the jury that it could find USPS regarded Savidge as disabled in his ability to work. However, the court did not instruct the jury that it could find USPS regarded Savidge as disabled in a major life activity due to his difficulty walking because this evidence, plus Franco's knowledge of his limp and abnormal gait, did not support such a claim. *See Kelly*, 94 F.3d at 109. Therefore, the court properly limited its instructions on the regarded-as-disabled claim, and the corresponding verdict form, to Savidge's ability to work.

The court also properly instructed the jury that Savidge must prove discrimination was a determinative factor in USPS's action. A "motivating factor" charge is appropriate when a plaintiff has direct evidence of discrimination. *See* Third Circuit Model Civil Jury Instructions, § 9.1.1, Commentary (2013). But Savidge had no such evidence. Therefore, the court committed no error in instructing the jury.[4]

Finally, the District Court did not commit reversible error in directing the deputy clerk to enter the jury room to clarify the jury's note. Although *ex parte* jury contact is generally disfavored, no prejudice occurred where, as here, the note's content was included in the record, Savidge was on notice of and had an opportunity to object to the clerk's conduct, the clerk testified on the record about what he asked the jury, and the jury responded via written note subsequently included in the record. *See, e.g.*, *Skill*, 677

---

[4] We need not decide whether Savidge waived his right to appeal this issue.

F.2d at 371 (citing *Arrington v. Robertson*, 114 F.2d 821, 822-23 (3d Cir. 1940)).  In

addition, Savidge presents no credible basis for finding he was harmed.

**IV.**     **Conclusion**

For the foregoing reasons, we will affirm the judgment of the District Court.